UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
                                                                       :
LEVAR HARRIS,                                                          :   20-CV-784 (ARR) (PK)
                                                                       :
           *Plaintiff*,                                          :
                                                                       :
    -against-                                                 :   **OPINION & ORDER**
                                                                       :
CITY OF NEW YORK; SERGEANT GOMEZ (Shield #                             :
477, Tax # 941024); POLICE OFFICER KERN (Shield #                      :
10507, Tax # 955000); POLICE OFFICER REYES                             :
(Shield # 27566, Tax # 953309),                                        X

           *Defendants*.

----------------------------------------------------------------------

ROSS, United States District Judge:

On February 12, 2020, Plaintiff Levar Harris commenced this action against Sergeant Cesar Gomez, Officer Sean Kern, and Officer Nelson Reyes, all employees of the New York City Police Department, as well as the City of New York (collectively, "defendants"). Pursuant to 42 U.S.C. §§ 1983 and 1985, plaintiff brings claims against Sergeant Gomez, Officer Kern, and Officer Reyes for false arrest, use of excessive force, conspiracy, battery, and assault, as well as a claim for municipal liability against defendant New York City. Defendants now move for summary judgment. For the following reasons, I grant defendants' motion in its entirety.

## BACKGROUND[1]

At approximately 1 a.m. on February 13, 2019, Officer Kern, Officer Reyes, and Sergeant Gomez (collectively "defendant officers") "were on patrol in an unmarked vehicle, in plainclothes,

---

[1] The following facts are taken from parties' respective Local Rule 56.1 statements of facts, depositions, and exhibits.

in the vicinity of Fulton Street and Throop Avenue." Defs.' 56.1 ¶ 12, ECF No. 30; Pl.'s 56.1 ¶ 12, ECF No. 33; Pl.'s Mem. L. in Opp'n Summ. J. 3 ("Pl.'s Opp'n"), ECF No. 32. Fulton Street "runs . . . in an east/west direction and is a two-way street with two lanes in each direction." Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 7. Defendant officers were driving eastbound on the south side of Fulton Street, while plaintiff walked westbound on the same side. Defs.' Reply 56.1 ¶¶ 13–14, ECF No. 36; Defs.' 56.1 ¶ 15; Pl.'s 56.1 ¶ 15. When plaintiff was approximately in the middle of the block, the parties passed each other. Defs.' 56.1 ¶¶ 16–17; Pl.'s 56.1 ¶¶ 16–17. "Plaintiff kept his eyes on the officers' vehicle" as they drove by him. Defs.' 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.

According to defendant officers, "[i]t appeared . . . that plaintiff was carrying a heavy object in one of his pockets[. Plaintiff] appeared to be quite keenly focused on their vehicle [and] turned to watch them as they drove past [him]." Defs.' 56.1 ¶ 19. Defendant officers allege that after they passed plaintiff, they started to make a U-turn. Defs.' 56.1 ¶ 21. As they were turning, plaintiff began crossing the street. Defs.' 56.1 ¶ 22.

Plaintiff disagrees. According to plaintiff, defendant officers had completed their U-turn and were already driving back toward plaintiff when he began crossing the street. Pl.'s 56.1 ¶ 22. *But see* Aff. in Supp. Summ. J., Ex. D 57:13−15, ECF No. 29-4. As he walked from the south to the north side of Fulton Street, where a McDonald's was located, "he turned on his cell phone to record." Defs.' 56.1 ¶¶ 8, 20, 23; Pl.'s 56.1 ¶¶ 8, 20, 23. Plaintiff avers that he pulled out his cell phone to record because he "knew what was about to happen" between him and defendant officers. *See* Aff. in Opp'n Summ. J., Ex. A 45:23−46:1 ("Harris Dep."), ECF No. 34-1 ("I already knew what was about to happen. . . . Typical Day. Black man walking down the street.").

The parties agree that when plaintiff crossed Fulton Street, he was in the middle of the block and not in a marked crosswalk. Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24. Plaintiff disputes that the

2

intersections of Fulton Street and Throop Avenue and Fulton Street and Albany Avenue had marked crosswalks and traffic signals in operation. See Pl.'s 56.1 ¶¶ 10–11; Defs.' 56.1 ¶¶ 10–11.

Once plaintiff was on the other side of Fulton Street, near the McDonald's parking lot, defendant officers stopped plaintiff and approached him. Defs.' 56.1 ¶ 25−26; Pl.'s 56.1 ¶ 25−26. When they reached him, "[o]ne officer held plaintiff's one arm, a second officer held plaintiff's other arm, and a third officer stood in front of plaintiff holding each side of [his coat]." Defs.' 56.1 ¶ 27; Pl.'s 56.1 ¶ 27. Defendant officers patted down plaintiff and searched him. Defs.' 56.1 ¶ 28; Pl.'s 56.1 ¶ 28. Plaintiff was not handcuffed during this interaction. Defs.' 56.1 ¶ 32; Pl.'s 56.1 ¶ 32. Nor was he punched, kicked, or pushed at any point. Defs.' 56.1 ¶ 33; Pl.'s 56.1 ¶ 33. "The only physical contact between [defendant] officers and plaintiff consisted of the officers holding plaintiff's arms, and frisking and searching him." Defs.' 56.1 ¶ 35; Pl.'s 56.1 ¶ 35. Plaintiff felt no physical pain. Defs.' 56.1 ¶ 34; Pl.'s 56.1 ¶ 34. After they searched him, defendant officers walked away from plaintiff without issuing him a summons. Pl.'s Opp'n 7. Once defendant officers had left, plaintiff stopped recording on his phone. Defs.' 56.1 ¶ 29; Pl.'s 56.1 ¶ 29.

On February 12, 2020, plaintiff filed a complaint against defendants alleging claims of false arrest,[2] use of excessive force, conspiracy, battery, assault, and municipal liability. *See* Compl. ¶¶ 12−14, 17−23. Defendants now move to dismiss all of plaintiff's claims on summary judgment.

---

[2] Parties do not dispute that defendant officers conducted a Fourth Amendment arrest of plaintiff. *See* Defs.' Mem. L. in Supp. Summ. J. 4 ("Defs.' Mot."), ECF No. 31; Pl.'s Opp'n 6−10; *cf. California v. Hodari D.*, 499 U.S. 621, 626 (1991) (explaining that under the Fourth Amendment, an arrest "requires either physical force . . . or, where that is absent, submission to the assertion of authority" (emphasis omitted)). Herein, I use the words "arrest," "detention," and "confinement" interchangeably and all to indicate plaintiff's arrest.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation, internal quotation marks, and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted); *see also* Southern and Eastern Districts of New York Local Civil Rule 56.1 (directing parties moving for and opposing summary judgment to submit "short, concise statement[s] . . . of the material facts" to which they "contend[] there is no genuine issue to be tried"). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citation omitted). "[T]he non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor, and only when that proof is slight is summary judgment appropriate."

4

*Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (first citing *Anderson*, 477 U.S. at 256, and then citing *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

## DISCUSSION

### I. False Arrest.

#### A. Elements of a false arrest claim.

"A claim for false arrest under § 1983 is based on one's Fourth Amendment right to be free from unreasonable seizures." *Franks v. City of N.Y.*, No. 13-CV-3056 (RRM), 2015 WL 4727300, at *3 (E.D.N.Y. Aug. 10, 2015). While the claim derives from the Fourth Amendment, *see Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), in the Second Circuit, false arrest claims brought under § 1983 are "analyzed pursuant to the same standards as the applicable state law's false tort." *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)); *see also Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases wherein state law was applied to claims of false arrest). Under New York law, a plaintiff alleging a false arrest claim must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) (citation omitted).

Where an officer has probable cause to arrest an individual, the confinement is considered privileged. *Nzegwu*, 605 F. App'x at 29. Thus, the existence of probable cause at the time of a person's arrest is an absolute defense to a claim of false arrest. *Jaegly v. Couch*, 439 F.3d 149, 152

5

(2d Cir. 2006). "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). This inquiry is an objective one: "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Rather, so long as the circumstances known to the officer, when viewed objectively, justify an arrest, the confinement is considered privileged. *See id.*; *Whren v. United States*, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." (emphasis omitted)). Moreover, when conducting an arrest, "the police need not have had probable cause with respect to each [] charge" ultimately made—if they have probable cause to believe that the individual is committing any crime, the arrest is justified. *Dinler v. City of N.Y.*, No. 04-CV-7921 (RJS), 2012 WL 4513352, at *3 (S.D.N.Y. Sept. 30, 2012) (citing *Marcavage v. City of N.Y.*, 689 F.3d 98, 109–10 (2d Cir. 2012)).

### B. As applied to plaintiff.

The parties in this case do not dispute that on the night of February 13, 2019, defendant officers confined plaintiff without his consent. Defs.' 56.1 ¶¶ 25−28; Pl.'s ¶¶ 56.1 25−28. Nor do they dispute that in the moments leading up to his arrest, plaintiff crossed Fulton Street in the middle of the block, outside of a marked crosswalk. Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24. In contention, however, is whether this conduct gave rise to probable cause. Plaintiff argues it did not; defendants disagree. Based on the record before me, I find that at the time of plaintiff's confinement, defendant officers had probable cause to arrest him based on his violation of city traffic laws.

Under § 140.10(1)(a) of the New York Criminal Procedure Law, a police officer may arrest

a person without a warrant where the officer "has reasonable cause to believe that such person has committed [an]offense in [their] presence." N.Y. Crim. Proc. Law § 140.10(1)(a). Although "[a] traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment," Vehicle and Traffic Law § 155 provides that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense." N.Y. Veh. & Traf. Law § 155. "Taking these sections together, [a violation of the traffic laws] constitutes an 'offense' subject to a warrantless arrest under New York state law." *Noel v. Cnty. of Nassau*, No. 11-CV-5370 (JS), 2015 WL 541461, at *7 (E.D.N.Y. Feb. 7, 2015); *see also United States v. McFadden*, 238 F.3d 198, 201–02 (2d Cir. 2001) (holding that "[u]nder New York law, the police may arrest someone without a warrant for a 'petty offense'" and that "[p]etty offenses include traffic infractions"); *cf. Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Defendant officers allege that they had probable cause to arrest plaintiff for violating three separate traffic laws when he crossed Fulton Street outside of the marked and signaled crosswalks at both Throop and Albany Avenues: New York City Department of Transportation Traffic Rules and Regulations ("TRR") § 4-04(c)(2) ("TRR § 4-04(c)(2)" or "§ 4-04(c)(2)"), which prohibits pedestrians from crossing at an intersection except within a crosswalk; TRR § 4-04(c)(3) ("TRR § 4-04(c)(3)" or "§ 4-04(c)(3)"), requiring pedestrians to cross the street "at a crosswalk on any block in which traffic control signals are in operation at both intersections bordering the block"; and Vehicle and Traffic Law § 1156(a), which provides that "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an

7

adjacent roadway."

Plaintiff acknowledges that he crossed Fulton Street in the middle of the block but argues that defendants have failed to establish that he violated the traffic laws. According to plaintiff, defendants have not submitted reliable evidence that, "on the night of the subject incident, the sidewalks were able to be used with safety, or that traffic control signals were in operation at both intersections bordering the block, or even that there was a crosswalk in the roadway." Pl.'s Opp'n 9. Plaintiff correctly points out that defendants' initial submission of evidence depicting the location where plaintiff crossed the street—Google-Maps photographs taken in November 2020, more than eighteen months after plaintiff's detention—cannot be relied upon to draw conclusions about the incident location on the night of February 13, 2019. *See id.* at 9; Aff. in Supp. Sum. J., Ex. C, ECF No. 29-3. Defendants have since cured this defect, however, by submitting four historical photographs of the incident location from October 2018 and May 2019, shortly before and after the night of plaintiff's arrest.[3] *See* Aff. in Supp. Summ. J., Ex. I ("Google-Maps Photographs"), ECF No. 35-1.

Across these two dates, the historical photographs show sidewalk construction on the south

---

[3] "Although courts need not consider evidence and legal arguments first included in reply papers unless they are in response to evidence and arguments in opposing papers, they are not without discretion to do so." *Utica Mut. Ins. Co. v. INA Reinsurance Co.,* No. 12-CV-194 (TWD), 2012 WL 12874471, at *6 n.11 (N.D.N.Y. Nov. 6, 2012) (citation omitted), *report and recommendation adopted*, 2012 WL 12874470 (N.D.N.Y. Dec. 14, 2012). Here, defendants' inclusion of new Google-Maps photographs is responsive to arguments raised by plaintiff, as well as evidence submitted by plaintiff in his opposition to summary judgment. Indeed, these photographs are from the same dates as the photographs submitted by plaintiff (May 2018 and October 2019); defendants' photographs merely show different angles of the same location. *See* Aff. in Opp'n Summ. J., Exs. H1−H3, ECF Nos. 34-8−10. "In addition, the record does not reflect any request by [plaintiff] to serve a sur-reply in response to [defendants'] inclusion of new evidence." *Utica Mut. Ins. Co.*, 2012 WL 12874471, at *6 n.11. I therefore deem it appropriate to consider this new evidence submitted in defendants' reply.

side of Fulton Street, where plaintiff was walking before he crossed the street.[4] The photographs additionally depict open crosswalks at both the Albany Avenue and Throop Avenue intersections and operating traffic signals at both locations. *See* Google-Maps Photographs. Based on these photographs, which show segments of the Fulton Street sidewalk barricaded, it is not clear whether, on the night of February 13, 2019, the sidewalks were safely useable—and, relatedly, whether plaintiff violated Vehicle and Traffic Law § 1156(a) when he walked across the road. Whether the sidewalks were available to plaintiff when he stepped into the road is thus a material fact properly determined by a jury. Nor can I find that plaintiff had violated TRR§ 4-04(c)(2) at the time of his arrest based on the evidentiary record. TRR § 4-04(c)(2) provides that pedestrians shall not "cross any roadway at an intersection except within a cross-walk." But plaintiff and defendants agree that plaintiff crossed the roadway in the *middle* of the block. Defs.' 56.1 ¶¶ 24−25; Pl.'s 56.1 ¶¶ 24–25. Based on these averments, defendant officers would not have had probable cause to arrest plaintiff for violating § 4-04(c)(2) because he was not at an intersection when he crossed Fulton Street. *Cf. Gonzalez v. City of N.Y.*, 14-CV-7721 (LGS), 2016 WL 5477774, at *11 (S.D.N.Y. Sept. 29, 2016) (explaining that the defendants did not have probable cause to arrest the plaintiff based on § 4-04(c)(2) because the "[p]laintiff was not at an intersection and was not crossing the roadway"), *partially rev'd on other grounds,* 2017 WL 149985 (S.D.N.Y. Jan. 13, 2017).

I can conclude from the record, however, that at the time of his arrest, plaintiff had violated § 4-04(c)(3), which prohibits pedestrians from "cross[ing] a roadway except at a crosswalk on any block in which traffic control signals are in operation at both intersections bordering the block."

---

[4] I may consider these photographs under the doctrine of judicial notice. *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 265 n.10 (S.D.N.Y. 2014) (taking judicial notice of the location of properties based on Google-Maps photographs).

9

Plaintiff crossed the roadway outside of the crosswalk, Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24, when, based on photographs of the incident location from shortly before and after plaintiff's arrest, crosswalks were clearly demarcated at the Albany Avenue and Throop Avenue intersections and traffic signals were in operation. Moreover, plaintiff has not adduced any evidence to suggest that the elements of § 4-04(c)(3) were not met on the night of his arrest. For example, plaintiff has not proffered that the traffic signals were malfunctioning on February 13 or that crosswalks did not exist at either intersection. Instead, plaintiff exclusively challenges the reliability of defendants' evidence, which has since been cured.[5] Pl.'s Opp'n 9–10. More is required from plaintiff at this stage of the case. At summary judgment, a non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998); *see also Long Island R.R.*, 230 F.3d at 38. Plaintiff has failed to do so here. Accordingly, I am persuaded that plaintiff had violated § 4-04(c)(3) in front of defendant officers at the time he was arrested. As such, there "is no dispute as to the pertinent events" determinative of probable cause here. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Because "an arrest is not unlawful so long as the officer has . . . probable cause to believe that the person arrested has committed any crime," *Zellner*, 494 F.3d at 369, I am compelled to dismiss plaintiff's false arrest claim.

      Resisting this conclusion, plaintiff makes two additional arguments that there was not probable cause for his arrest. First, plaintiff argues that because "[d]efendants by their own conduct, without any reasonable basis, created the circumstances by which [p]laintiff was forced to cross Fulton Street for his own safety," defendant officers did not have probable cause. Pl.'s

---

[5] Indeed, in their reply brief, defendants rely on Google-Maps photographs from the same dates as the photographs submitted by plaintiff in his opposition.

10

Opp'n 8–9. As plaintiff explains, "[t]he police may not create alleged pretextual probable cause by their own gratuitous conduct." *Id.* at 9 (citing *People v. Levan*, 476 N.Y.S.2d 101 (N.Y. 1984)). Plaintiff alleges that defendant officers did so when they "made an illegal U-turn" and "double[d] back directly towards" plaintiff, thereby forcing plaintiff to cross the street. *Id.* at 8–9. In support of his argument, plaintiff cites a series of state law cases. *See id.* at 9 (citing *People v. McBride*, 902 N.Y.S.2d 830 (N.Y. 2010), *Levan*, 476 N.Y.S.2d 101, and *People v. Lott*, 478 N.Y.S.2d 193 (N.Y. App. Div. 1984)). These cases are unpersuasive, however, as they all concern the propriety of police officers' warrantless entries into and searches of the defendants' homes, where, "[a]bsent exigent circumstances," the police may not reasonably enter "without a warrant." *Payton v. New York*, 445 U.S. 573, 589–90 (1980). In each case, the officers argued that an exigent circumstance justified their warrantless entry, while the defendants claimed that the police improperly created the exigency themselves. *See McBride*, 902 N.Y.S.2d at 834; *Levan*, 476 N.Y.S.2d at 103–04; *Lott*, 478 N.Y.S.2d at 197. But exigent circumstances, which apply "when the needs of law enforcement [are] so compelling that a warrantless search is objectively reasonable," *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (citation omitted), were not at issue in plaintiff's case. Defendant officers did not arrest plaintiff based on any exigency; rather, they arrested him after he created probable cause by walking across the street in violation of § 4-04(c)(3). Plaintiff has cited no cases in which a court found that the police improperly created probable cause through their own conduct. Absent applicable precedent, I decline to find that defendant officers' probable cause was vitiated by their own actions.

Plaintiff next contends that defendants made the decision to stop and search plaintiff at the point when "[d]efendants made [their] U-turn" and before plaintiff had "engaged in jaywalking or

11

any other behavior that would warrant his forceful seizure and search by defendants."[6] Pl.'s Opp'n 6. Under this argument, plaintiff alleges that defendant officers' "claim of jaywalking" was purely pretextual, used to cover up more insidious motives. *Id.* at 8. To be sure, plaintiff has adduced compelling evidence that he believed he was being pursued by defendant officers when he decided to cross Fulton Street: as plaintiff explained in his deposition testimony, when he noticed defendant officers make the U-turn, he put his phone on record and crossed the street to the McDonald's, where there were people around "to see what[ was] about to happen and what could happen." *See* Harris Dep. 45:11−46:9; Pl.'s Opp'n 6. According to plaintiff, pretextual or prejudice-driven police stops of young Black men are part of everyday life in his neighborhood, suggesting plaintiff believed he was about to be stopped even before he crossed the street. *See* Harris Dep. 60: 20−24 ("Young Black men, we experience this every day growing up in this area where we live."). But while "courts have understandably expressed [ ] skepticism about justifying custodial arrests undertaken for other reasons based on violations of traffic laws that likely are rarely the subject of arrests," *Roper v. City of N.Y.*, No. 15-CV-8899 (PAE), 2017 WL 2483813, at *4 (S.D.N.Y. June 7, 2017), "the Supreme Court has made explicitly clear that courts may not 'entertain Fourth Amendment challenges based on the actual motivations of individual officers,'" *United States v. Dupree*, No. 16-CR-84 (ARR), 2016 WL 10703796, at *3 n.2 (quoting *Whren*, 517 U.S. at 813),

---

[6] According to plaintiff, some defendant officers, when questioned by the New York City Civilian Complaint Review Board ("CCRB") about the incident in question, suggested that their stop of plaintiff was motivated by a bulge in his pocket but gave inconsistent testimony on this point. Pl.'s Opp'n 6–7. Specifically, plaintiff alleges that Officer Reyes gave conflicting testimony to the CCRB, first testifying that, when driving past plaintiff, he observed a "heavy object in his coat pocket," and then later claiming it was a "bulge in [p]laintiff's front pants pocket." *See* Pl.'s Opp'n 6. However, plaintiff omits key portions of Officer Reyes's testimony, which also mentions plaintiff's crossing of Fulton Street in the middle of the block as a partial reason for the stop. *See* Aff. in Opp'n Summ. J., Ex. C 48: 2−23, 84:3−16 ("Reyes Dep."), ECF No. 34-3. Moreover, while the reasons for the stop proffered by defendant Officer Reyes may not be identical across his testimony, they are ultimately immaterial to my analysis for reasons discussed below.

12

*aff'd* 767 F. App'x. 181 (2d Cir. 2019).

So long "as the officers[] *could* have stopped [the plaintiff] because he [violated the traffic law], the court may not consider whether his commission of this minor infraction was the actual basis for the stop." *Dupree*, 2016 WL 10703796, at *3 n.2 ; *see also United States v. Miller*, 382 F. Supp. 2d 350, 367 (N.D.N.Y. 2005) ("If the seizure is thus justified, it is irrelevant whether the police had some ulterior motive or 'pretext' for the stop, since probable cause justifies the Fourth Amendment intrusion.").[7] Applying this standard, plaintiff's argument as to pretext cannot succeed. Plaintiff was not seized for purposes of his false arrest claim until defendant officers approached plaintiff on the north side of Fulton Street, put their arms on him, and searched his person. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority." (emphases omitted)); *United States v. Simmons*, 560 F.3d 98, 105–06 (2d Cir. 2009) ("A police officer's order to stop constitutes a seizure if 'a reasonable person would have believed that he was not free to leave,' and the person complies with the officer's order to stop." (first quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) and then citing *United States v. Swindle*, 407 F.3d 562, 566 (2d Cir. 2005))). By that time, defendant officers had probable cause to arrest predicated on plaintiff's violation of § 4-04(c)(3). Accordingly, any reasons that may have motivated defendant officers' pursuit of plaintiff are immaterial; plaintiff's false arrest claim must fail as a matter of law.

---

[7] Because defendant officers "had the authority to stop and arrest [plaintiff], or at least to stop him in order to issue a summons," *Dupree*, 2016 WL 10703796, at *2 (citing *McFadden*, 238 F.3d at 202), it also does not matter that they ultimately let plaintiff go without arresting him or issuing a summons. *Cf. United States v. Diaz*, 854 F.3d 197, 205−06 (2d Cir. 2017) (explaining that a search incident to arrest is lawful where officers have probable cause to arrest the defendant, irrespective of whether the officers intend to arrest him).

13

Notwithstanding my conclusion, I join several of my sister courts in expressing concern over custodial arrests for non-criminal traffic infractions. *See, e.g.*, *Glasgow v. Beary*, 2 F. Supp. 3d 419, 424 (E.D.N.Y. 2014) ("The constitutionality of a full custodial arrest based only on probable cause for a non-criminal traffic infraction is unclear and dubious. Consider that, once arrested, an individual may be handcuffed, searched, and divested of property, kept in a jail cell for forty-eight hours without encountering a judicial officer, and forced to undergo a visual inspection of genitals, all without offending the Fourth Amendment." (citations omitted)); *Foy v. City of N.Y.*, No.17-CV-406 (ARR), 2019 WL 3717317, at *5 (E.D.N.Y. Aug. 7, 2019) (noting that the plaintiff's apparent violation of a traffic law did not mean " that the decision to arrest was a sensible one" and collecting cases); *cf. Utah v. Strieff*, 579 U.S. 232, 252 (2016) (Sotomayor, J. dissenting) ("Although many Americans have been stopped for speeding or jaywalking, few may realize how degrading a stop can be when the officer is looking for more."). In addition to the significant infringements on liberty that attend an arrest, this practice may have unintended consequences. For example, in New York City, evidence suggests that tickets for jaywalking are disproportionately meted out to people of color. *See* Gersh Kuntzman, *NYPD Targets Blacks and Latinos for 'Jaywalking' Tickets*, StreetsBlog NYC, (Jan. 8, 2020), https://nyc.streetsblog.org/2020/01/08/nypd-targets-blacks-and-latinos-for-jaywalking-tickets/ (finding that 89.5% of jaywalking summonses went to Black and/or Hispanic people despite those groups accounting for just 55% of the city's population). Nevertheless, the New York State legislature has made clear that traffic infractions are arrestable offenses. Absent a legislative mandate to the contrary, I am bound to find that defendant officers' arrest of plaintiff was proper.

## II. Excessive Force.

"Excessive force claims brought under Section 1983 are 'judged under the Fourth

Amendment's "objective reasonableness" standard,'" *Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) (quoting *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir.2012)), which asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Remy v. Beneri*, No. 09-CV-4444 (SJF), 2011 WL 5546237, at *4 (E.D.N.Y. Nov. 9, 2011) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). In determining the reasonableness of an officer's use of force, therefore, a court must consider "the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he [was] actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). Generally, a plaintiff "must prove that he sustained some injury to prevail on an excessive force claim." *Doonan v. Vill. of Spring Valley*, No. 10-CV-7139 (VB), 2013 WL 3305767, at *3 (S.D.N.Y. June 25, 2013); *see Landy v. Irizarry*, 884 F. Supp. 788, 798 n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim."); *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 699 (S.D.N.Y. 1999).

Plaintiff acknowledges that he was not physically injured by his arrest, Defs.' 56.1 ¶ 34; Pl.'s 56.1 ¶ 34, but contends that defendant officers should be liable for excessive force on several other bases. First, plaintiff alleges that the force used by defendant officers was altogether gratuitous because the "entire encounter should never have happened." Pl.'s Opp'n 10–11. This argument is without merit, however, as I already determined that at the time of plaintiff's arrest, defendant officers had probable cause to detain him. *See* Discussion I.B, *supra*.

Plaintiff next points to defendant officers' verbal harassment of him. To be sure and viewing the evidence in the light most favorable to plaintiff, defendant officers' conduct towards plaintiff was inappropriate and demeaning. According to plaintiff, "[a]fter physically releasing [him], [defendant officers] proceeded to mock, humiliate, and laugh at him." Pl.'s Opp'n 10. Defendant officers responded to his request for their names and badge numbers in a "menacing and aggressive manner," with Officer Reyes repeatedly telling plaintiff to "remember that," referring to his name and badge number Pl.'s Opp'n 4–5; Aff. in Opp'n Summ. J., Ex. C 55:9–59:20 ("Reyes Dep."), ECF No. 34-3. Finally, as defendant officers walked away, they told plaintiff to get a job and "responded 'oooh' in a mocking tone" when plaintiff told them that he was a pharmacy technician. Pl.'s Opp'n 5. However, "[a]lthough indefensible and unprofessional," this conduct cannot amount to excessive force because "verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995); *see also Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (collecting cases).

Finally, plaintiff asserts that because of defendant officers' conduct, he was "caused to suffer indignity, humiliation, mental anguish, and distress" and "continues to have a distrust of the police and experience[] anxiety and stress whenever he observes the police in public." Pl.'s Opp'n 11; *see also* Harris Dep. 60:4–60:24; 62:1–62:10 (explaining the emotional degradation of his arrest). "However, a conclusory assertion of 'emotional injuries' of the 'garden variety—namely mental pain, suffering, humiliation, damage to reputation, and emotional anguish without more is insufficient to sustain a claim for excessive force.'" *Livingston v. Henderson*, No. 15-CV-631 (TWD), 2019 WL 1427689, at *12 (N.D.N.Y. Mar. 29, 2019) (alterations omitted) (quoting

16

*Sullivan v. City of N.Y.*, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *11 (S.D.N.Y. July 10, 2018)). While there may be instances where an emotional injury can sustain a claim of excessive force, *see Guerrero v. City of N.Y.*, No. 12-CV-2916 (RWS), 2013 WL 673872, at *5 (S.D.N.Y. Feb. 25, 2013) ("Such a conclusory assertion [of mental and emotional harm], *unaccompanied by allegations of a specific or identifiable mental injury*, is an insufficient basis for an excessive force claim." (emphasis supplied)), plaintiff's conclusory recitations cannot here carry his claim.

Because plaintiff has failed to adduce evidence of any injury that is cognizable under the Fourth Amendment, I find that summary judgment is appropriate on his excessive force claim.

### III. Conspiracy, Battery, and Assault.

#### A. Conspiracy.

In addition to his constitutional claims, plaintiff's complaint alleges that defendants conspired against him. Compl. ¶ 14. However, plaintiff has not addressed defendants' argument, raised in their Motion for Summary Judgment, that this claim fails as a matter of law. Indeed, plaintiff's opposition to summary judgment is altogether silent on his conspiracy claim. When a party is represented by counsel, as plaintiff is here, "a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014); *see also Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way"). When "abandonment by a counseled party is not explicit," a court may infer abandonment "from the papers and circumstances viewed as a whole . . . [and] conclude that abandonment was intended." *Fed. Express*, 766 F.3d at 196. Applying these principles here, I infer, based on plaintiff's filings, that

17

he has abandoned his conspiracy claim.

### B. Battery and assault.

Finally, plaintiff contends that his last two claims—for assault and battery—proceed under federal, not state law. *See* Pl.'s Opp'n 13; Pl.'s 56.1 ¶ 5. However, I have "not found any [precedent] that recognizes either an assault or a battery claim grounded in § 1983," *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018), *aff'd on other grounds*, 765 F. App'x 493 (2d Cir. 2019), and plaintiff's counsel has not provided any cases recognizing these causes of action under federal law. Indeed, "[a] number of courts have held that a § 1983 claim alleging assault and battery is properly construed as an excessive force claim." *Johnston v. City of Syracuse*, No. 20-CV-1497 (DNH), 2021 WL 3930703, at *5 (N.D.N.Y. Sept. 2, 2021); *see, e.g.*, *Henderson v. Williams*, No. 10-CV-1621 (JCH), 2013 WL 1984545, at *3 n.3 (D. Conn. May 13, 2013) ("[T]here is no federal common law claim for assault or battery."); *Yanga v. Neb. Dep't of Corr. Servs.*, No. 19-CV-420, 2021 WL 520530, at *6 (D. Neb. Feb. 11, 2021) (coming to the same conclusion and providing cases).

Accordingly, I find that plaintiff's § 1983 assault and battery claims duplicate his excessive force claim and, for the same reasons discussed above, fail as a matter of law.[8]

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted in its entirety. Plaintiff's false arrest, excessive force, conspiracy, assault, battery, and municipal liability claims are dismissed. The Clerk of Court is directed to enter judgment in favor of defendants and terminate plaintiff's case.

---

[8] Because I find that plaintiff's constitutional rights were not violated by defendant officers, I do not reach plaintiff's municipal liability claim against defendant New York City. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:    February 15, 2022
          Brooklyn, New York